NATIONAL ENVIRONMENTAL FOUN-
DATION, Plaintiff–Appellant,

v.

ABC RAIL CORPORATION,
Defendant–Appellee.

No. 90–7214.

United States Court of Appeals,
Eleventh Circuit.

March 19, 1991.

Edwin L. Yates, Robert D. Drummond,
Jr., Montgomery, Ala., for plaintiff-appel-
lant.

Helen Currie Foster, Cabaniss, Johnston,
Gardner, Dumas & O'Neal, Birmingham,
Ala., Carolyn J. Harvey, Julius C. McEl-
veen, Jr., Jones, Day, Reavis & Pogue,
Washington, D.C., for defendant-appellee.

Before POWELL [*], Associate Justice
(Retired), United States Supreme Court,
TJOFLAT, Chief Judge, and
ANDERSON, Circuit Judge.

POWELL, Associate Justice:

The issue presented is whether a citizen
action brought against an industrial pollu-
ter is an action pursuant to 33 U.S.C.
§ 1317(a) (§ 307(a) of the Clean Water Act)
for the purposes of waiving the 60–day
notice requirement found in 33 U.S.C.
§ 1365 (§ 505 of that act). We must, how-
ever, first decide whether the 60–day notice
requirement is mandatory. Because we
hold that it is mandatory and that appel-
lant's suit is not an action respecting 33
U.S.C. § 1317(a), we affirm the district
court's [1] dismissal of appellant's complaint.

I

Appellee ABC Rail Corporation (ABC) op-
erates a plant in Calera, Alabama. This
plant, as part of its operation, discharges
chemicals into Buxahatchee Creek under
the authorization of the Alabama Depart-
ment of Environmental Management

---

[*] Honorable Lewis F. Powell, Jr., Associate Justice
of the United States Supreme Court, retired,
sitting by designation.

1. The Honorable William M. Acker, Jr., United
States District Judge for the Northern District of
Alabama.

(ADEM) in accordance with and subject to the provisions of the Clean Water Act (Act), 33 U.S.C. §§ 1251 *et seq.* and relevant state statutes. On January 22, 1989, appellant the National Environmental Foundation (NEF) sent notice to the appellee, the Environmental Protection Administration (EPA) and ADEM advising them that it would file a citizens suit against ABC. NEF filed a complaint in the federal district court for the Northern District of Alabama the next day. The complaint alleged that ABC's Calera plant was discharging pollutants, including the toxic chemicals of copper, lead, and zinc, in violation of the Act. It specifically alleged violations of 33 U.S.C. §§ 1311(a) and 1317 and the plant's National Pollution Discharge Elimination Systems Permit issued pursuant the the Act.

ABC moved to dismiss the complaint on the grounds that NEC had failed to give 60 day's notice as required by 33 U.S.C. § 1365(b). The district court granted ABC's motion. It held that appellant's action against ABC for violations of toxic effluent limitations is an action respecting 33 U.S.C. § 1317(d). Since only suits respecting 33 U.S.C. § 1317(a) (§ 1317(a)) were exempt from the notice requirement, the appellant was required to give 60 days notice before filing its complaint under 33 U.S.C. § 1365(b) (§ 1365(b)).[2] Appellant, however, had given only one day's notice. The district court dismissed appellant's complaint without prejudice, noting that it could refile after complying with the Act's notice provision. NEF now appeals the dismissal of its complaint.

## II

■ Before we address appellant's argument, we must first establish whether the 60–day notice requirement in 33 U.S.C. § 1365(b) is mandatory. This section allows citizens to bring suits against EPA, state environmental agencies, and alleged polluters for violations of the Clean Water Act. It does, however, impose some restrictions on citizen suits. It provides:

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, ... except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title....

33 U.S.C. § 1365(b).

In *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), the United States Supreme Court held that the 60–day notice requirement of the Resource Conservation and Recovery Act (RCRA) found in 42 U.S.C. § 6972 was mandatory: when a plaintiff does not comply with its provisions, the complaint must be dismissed. Section 6972 of Title 42 states that "[n]o action may be commenced ... prior to sixty days after the plaintiff has given notice of the violation." The Court, looking at the plain language of the statute, concluded "compliance with the 60–day notice provision is a mandatory, not optional, condition precedent for suit." *Id.* 110 S.Ct. at 309.

Section 1365(b) of Title 33 is a direct analogue of the RCRA 60–day notice provision examined in *Hallstrom*. *Id.*, at 307 n. 1. We also find the language of 33 U.S.C. § 1365 equally clear: like 42 U.S.C. § 6972, Section 1365(b) states that except in certain enumerated instances "[n]o action may be commenced ... prior to 60 days after the plaintiff has given notice." Consequently, we hold that the 60–day notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act. If a plain-

---

**2.** The court also stated that under 33 U.S.C. § 1365 immediate actions are allowed only when the action is brought against the Administrator of EPA, but chose to rely upon and explain its holding based on the interpretation of § 1317(a). Since the district court's statement on all immediate actions is not essential to the holding or to the outcome of the case we regard it as dicta. Consequently, we do not address that issue in this opinion.

tiff fails to comply with this notice requirement where it is applicable, the district court is required to dismiss the action.

### III

■ While the notice requirement contained in 33 U.S.C. § 1365(b) is mandatory, there are two exemptions recognized in the statute: citizen suits brought "respecting a violation of § 1316 or § 1317(a)" of Title 33. 33 U.S.C. § 1365(b). Appellant argues that its complaint alleging ABC's violations of toxic effluent limitations is a complaint alleging violations of 33 U.S.C. § 1317(a), and therefore it is not required to give 60 day's notice.[3] The district court rejected this argument. It held that § 1317(a) is directed solely at the Administrator of EPA. Therefore, any suit brought for violations of this subsection would have to brought against the Administrator. It held that appellant's suit had been brought under § 1317(d)—the subsection directed at private parties and proscribing violations of

standards created in the other portions of § 1317. Appellant now argues that the district court erred in its construction of § 1317(a) and (d). We agree with the district court.

The starting point in every case involving construction of a statute is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The language of Section 1317(a) clearly addresses the Administrator only. It directs him or her to establish a list of toxic pollutants.[4] It also directs the Administrator to establish effluent limitations, and gives the Administrator the authority to create national effluent standards.[5] Since § 1317(a) prescribes duties only upon the Administrator, it follows that only the Administrator can be sued for violating it.

Subsection 1317(d) is the first and only subsection of § 1317 to impose duties upon or proscribe conduct by private parties.[6] It

---

**3.** Appellant concedes that this suit is not an action respecting a violation of 33 U.S.C. § 1316.

**4.** Section 1317(a)(1) provides: "On and after December 27, 1977, the list of toxic pollutants or combination of pollutants subject to this chapter shall consist of those toxic pollutants listed in table 1 of Committee Print Numbered 95–30 of the Committee on Public Works and Transportation of the House of Representatives, and the Administrator shall publish, not later than the thirtieth day after December 27, 1977, that list. From time to time thereafter, the Administrator may revise such list and the Administrator is authorized to add to or remove from such list any pollutant. The Administrator in publishing any revised list, including the addition or removal of any pollutant from such list, shall take into account toxicity of the pollutant, its persistence, degradability, the usual or potential presence of the affected organisms in any waters, the importance of the affected organisms, and the nature and extent of the effect of the toxic pollutant on such organisms. A determination of the Administrator under this paragraph shall be final except that if, on judicial review, such determination was based on arbitrary and capricious action of the Administrator, the Administrator shall make a redetermination." 33 U.S.C. § 1317(a)(1).

**5.** Section 1317(a)(2) provides: "[e]ach toxic pollutant listed in accordance with paragraph (1) of this subsection shall be subject to the effluent limitations resulting from the application of the

best available technology economically achievable for the applicable category or class of point sources established in accordance with sections 1311(b)(2)(A) and 1314(b)(2) of this title. The Administrator, in his discretion, may publish in the Federal Register a proposed effluent standard (which may include a prohibition) establishing requirements for a toxic pollutant which, if an effluent limitation is applicable to a class or category of point sources, shall be applicable to such category or class only if such standard imposes more stringent requirements ... [further language setting out procedure for proposing standards] ... Effluent limitations shall be established in accordance with sections 1311(b)(2)(A) and 1314(b)(2) of this title for every toxic pollutant referred to in table 1 of Committee Print Numbered 95–30 of the Committee on Public Works and Transportation of the House of Representatives as soon as practicable after December 27, 1977, but no later than July 1, 1980. Such effluent limitations or effluent standards (or prohibitions) shall be established for every other toxic pollutant listed under paragraph (1) of this subsection as soon as practical after it is so listed." 33 U.S.C. § 1317(a)(2). The remaining subsections of § 1317(a) establish criteria that the Administrator must follow in promulgating the standards that may be established under § 1317(a)(2).

**6.** Section 1317(d) provides: "[a]fter the effective date of any effluent standard or prohibition or pretreatment standard promulgated under this section, it shall be unlawful for any owner or

follows, therefore, from the plain language of the statute, that any suit against a private entity for a violation of a limitation set forth under any of the provisions of § 1317(a) is an action for a violation of § 1317(d). Appellant's suit is just such an action.

The appellant admits that at first glance the plain language of § 1317(a) would indicate that it applies only to the Administrator. It argues, however, that if this literal reading of § 1317(a) is applied to the statutory exemptions in § 1365(b), it will produce a result demonstrably at odds with the intentions of Congress.

Appellant argues that the legislative history of § 1365(b) shows that Congress intended to allow immediate citizen's suits for violations of toxic effluent limitations, citing Senate Report (Public Works Comm.) No. 92–414 Oct. 28, 1971, reprinted at 1972 U.S.Code Cong. and Admin.News, p. 3668. The portions of the report cited by appellant show that the committee emphasized that there should be no waiting period for citizen's suits where the alleged violation "is a failure to comply with an administrative enforcement order, a violation of a standard of performance, or a prohibition, or effluent standard or limitation in the act...." Senate Report, *supra* at 3746.

We do not find this portion of the legislative history to be illuminating. For, as appellant admits, the committee's language does not reflect the restrictive language ultimately adopted in the statute. We find no clearly expressed intent contrary to the plain language of the statute. Therefore the plain language of the statute controls. *Product Safety Comm'n*, 447 U.S. at 108, 100 S.Ct. at 2056.

Appellant finally argues that a strict reading of § 1317(a) in conjunction with the requirements of § 1365(b) would frustrate the primary objective in § 1317 of preventing toxic effluants. We disagree. The Supreme Court has explained that the purpose of § 1365(b) is to give the alleged violator an opportunity to bring itself into compliance with the Act, and thus make the citizen suit unnecessary. *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.* 484 U.S. 49, 60, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987); *see also Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128, 1131 (11th Cir.1990). Section 1365(b)(1)(B) allows either federal or state authorities to bring an enforcement action within the 60 day period. A government enforcement action brought during the notice period bars the citizen suit. *Gwaltney*, 484 U.S. at 59, 108 S.Ct. at 382. We believe that another purpose behind the notice requirement of § 1365 is to effectuate Congress's preference that the Act be enforced by governmental prosecution. *See Gwaltney*, 484 U.S. at 60, 108 S.Ct. at 382; *Atlantic*, 897 F.2d 1131 n. 4. A literal interpretation of § 1317(a) in conjunction with the 60–day notice requirement does not conflict with the general goal of reducing toxic emissions. This application simply gives other methods of enforcement—compliance under the threat of litigation and government enforcement actions—priority over citizen law suits.

The appellant has failed to show any reason why we should not follow the plain language of 33 U.S.C. § 1317(a) and (d) in the application of the notice requirement of 33 U.S.C. § 1365(b). We hold that the appellant's suit brought against ABC for alleged violations of toxic limitations is an action respecting a violation of 33 U.S.C. § 1317(d). As a result, the appellant is required under 33 U.S.C. § 1365(b) to give EPA, ADEM and the appellee 60 days notice before filing its complaint. The appellant failed to comply with this notice requirement. As a result, the district court properly dismissed the complaint.

IV

The order of the district court dismissing appellant's complaint with out prejudice is—

AFFIRMED.

___

operator of any source to operate any source in violation of any such effluent standard or prohibition or pretreatment standard." 33 U.S.C. § 1317(d).

ANDERSON, Circuit Judge, concurring specially:

I concur, but my concurrence is based upon a different rational. The opinion for the court assumes that an action under subsection 1317(d) cannot be an action "respecting a violation of section ... 1317(a)." Respectfully, it seems to me that there may be some doubt about that proposition and since the case is easily resolved on the basis of another rationale, I prefer not to decide that issue.

Section 1365 provides for the mandatory 60 day notice except in actions "respecting a violation of sections 1316 and 1317(a)." There is at least a colorable argument that an action against a private party pursuant to subsection 1317(d) is an action "respecting" a violation of subsection 1317(a) when the action seeks to enforce an effluent standard which was promulgated under subsection 1317(a).

It is not necessary in the instant case to resolve the foregoing potential ambiguity in the statute, because the instant suit does not seek to enforce an effluent standard promulgated under subsection 1317(a). Rather, the instant suit relates to pollutants with respect to which the Administrator has promulgated no effluent standards pursuant to subsection 1317(a). For that reason, it is clear that the instant action is not an action "respecting" a violation of subsection 1317(a).